# CAROL ANN NASH ET AL. *v.* BETSEY N. STEVENS ET AL.
## (AC 33958)

DiPentima, C. J., and Alvord and Lavery, Js.

Argued October 10, 2012—officially released July 9, 2013

*Sheila J. Hall*, with whom, on the brief, was *Lawrence C. Sgrignari*, for the appellants (plaintiffs).

*Timothy W. Crowley*, for the appellee (named defendant).

*Philip C. Pires*, with whom was *Barbara M. Schellenberg*, for the appellee (defendant Evelene N. Rabou).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Carol Ann Nash, appeals from the summary judgment rendered in favor of the defendants, Betsey N. Stevens and Evelene N. Rabou.[1] On appeal, the plaintiff claims that the trial court improperly granted the defendants' motions for summary judgment as a result of (1) its misapplication of General Statutes § 47-33a and (2) its failure to consider the intent of the parties in its analysis of § 47-33a. We are not persuaded, and, therefore, affirm the judgment of the trial court.

The following undisputed facts were set forth in the court's memorandum of decision and are relevant to this appeal. On May 16, 1977, Chary D. Nash executed a warranty deed conveying a parcel of property to her son, H. Franklin Nash, Jr. This parcel has been described by the parties and the trial court as the "first piece." In that same transaction, Chary D. Nash also conveyed an option to purchase parcels of property referred to as the "second piece" and "third piece" for

[1] The plaintiff commenced this action individually and in her capacity as the executrix of the estate of H. Franklin Nash, Jr., and as trustee of the Carol Ann T. Nash revocable trust. We refer to Carol Ann Nash in both capacities as the plaintiff. The plaintiff brought the action against the defendants as individuals and as coexecutors of the estate of Chary D. Nash.

$1.[2] On the same day, H. Franklin Nash, Jr., executed a warranty deed conveying the first piece, and the option to purchase the second piece and third piece, to himself and his wife, the plaintiff. These transactions occurred at the office of an attorney who conducted the real estate closing. On September 22, 2009, H. Franklin Nash, Jr., and the plaintiff executed a quitclaim deed conveying their ownership of the first piece and the option to purchase the second piece and third piece to the plaintiff as trustee of the Carol Ann T. Nash revocable trust.

On November 22, 2009, Chary D. Nash died and left her estate to her children, H. Franklin Nash, Jr., and the defendants, all of whom were appointed as coexecutors of her estate. On February 6, 2010, H. Franklin Nash, Jr., died and left his entire estate to the plaintiff, who was appointed executrix of his estate. On or about April 27, 2010, the plaintiff informed the defendants of her intention to exercise the option to purchase the second piece and third piece. The defendants responded that they would not honor the attempt to exercise the option to purchase. The plaintiff submitted a notice of claim for specific performance against the estate of Chary D. Nash; that was denied.

On July 15, 2010, the plaintiff commenced this action with a complaint seeking specific performance of the

---

[2] "An option is a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer." *Smith* v. *Hevro Realty Corp.*, 199 Conn. 330, 336, 507 A.2d 980 (1986); see also *Cutter Development Corp.* v. *Peluso*, 212 Conn. 107, 112, 561 A.2d 926 (1989) (distinguishing feature of option contract is that there is no binding obligation on option holder to complete purchase); *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 815–16, 3 A.3d 992 (2010) (option contract merely gives right to purchase within limited time without imposing any obligation to purchase).

option contract. In March, 2011, the defendants separately filed motions for summary judgment.[3] The defendants argued that they were entitled to judgment as a matter of law pursuant to § 47-33a. On April 26, 2011, the plaintiff filed an opposition to the motions for summary judgment. The plaintiff attached a memorandum of law and her affidavit. Rabou filed a reply to the plaintiff's opposition.

On August 9, 2011, the plaintiff filed a motion for permission to file a supplemental memorandum of law. The plaintiff stated that, during discovery, she had obtained a document that was relevant to the matters pending before the court: "Specifically, the [p]laintiff was provided a handwritten document which bears the signature of Chary D. Nash, the grantor of the option which is the subject of the complaint, which is dated the same day as the deed granting the option to her son, H. Franklin Nash, Jr., and which related directly to the date of the performance of the option." The plaintiff further claimed that the court should consider this handwritten note in order to fully and fairly decide the motions for summary judgment. Rabou objected, arguing that the option contract was unambiguous and, therefore, it was not necessary for the court to consider the plaintiff's claims regarding intent. She further contended that the exhibit was inadmissible because it was not authenticated. The court denied the plaintiff's motion for permission to file a supplemental memorandum of law and sustained Rabou's objection. It stated: "The exhibit is a handwritten note purportedly bearing the signature of Chary D. Nash, who is now deceased. The plaintiff has not submitted to the court any documentation attesting to the authenticity of the exhibit.

---

[3] Rabou filed her motion for summary judgment on March 2, 2011, and Stevens filed her motion two days later. Stevens, in her motion, expressly adopted the motion, memorandum of law and exhibits filed by Rabou.

Absent admissible supporting documentation, the court cannot consider the exhibit."

On October 4, 2011, the court issued a memorandum of decision granting the defendants' motions for summary judgment. It stated that there was no dispute that the option to purchase the second piece and third piece, executed on May 16, 1977, did not provide a date for the option's performance, nor were there any extensions of the option. Applying the language of § 47-33a (a), the court determined that the option to purchase expired on November 16, 1978, eighteen months after the execution of the option contract. The court rejected the plaintiff's argument that the intent of the parties should be considered, stating that such an approach was not permitted by § 47-33a (a). The court ruled that even if it were free to consider the intent of the parties, there was no ambiguity in the language of the option to purchase the second piece and third piece. Finally, the court distinguished, both factually and legally, the two cases cited by the plaintiff, *Texaco Refining & Marketing, Inc.* v. *Samowitz*, 213 Conn. 676, 682–83, 570 A.2d 170 (1990) (*Texaco*), and *Battalino* v. *Van Patten*, 100 Conn. App. 155, 917 A.2d 595, cert. denied, 282 Conn. 924, 925 A.2d 1102 (2007). The court concluded: "More than thirty-three years have passed since the date the contract to purchase the '[s]econd [p]iece' and the '[t]hird [p]iece' was granted. The court finds that the undisputed material facts establish that the plaintiff did not commence this action within the required statutory time period. This action for specific performance is therefore time barred by . . . § 47-33a." This appeal followed.

We begin our analysis by setting forth our standard of review and certain legal principles regarding summary judgment. "Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law. . . . The motion for summary judgment is designed to eliminate the delay and expense of litigating an issue when there is no real issue to be tried. . . . However, since litigants ordinarily have a constitutional right to have issues of fact decided by a [fact finder] ; . . . the moving party for summary judgment is held to a strict standard . . . of demonstrating his entitlement to summary judgment." (Citation omitted; internal quotation marks omitted.) *Grenier* v. *Commissioner of Transportation*, 306 Conn. 523, 534–35, 51 A.3d 367 (2012); see also Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant [the defendants'] motion for summary judgment is plenary. . . . Issues of statutory construction . . . are also matters of law subject to our plenary review." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010). Guided by these principles, we turn to the issues raised by the plaintiff's appeal.

This appeal requires the resolution of two separate, yet related, matters. The first is a determination of the temporal limitations for commencing an action for specific performance as set forth in § 47-33a.[4] Second, we must decide, under the facts and circumstances of this

[4] The only remedy sought by the plaintiff is specific performance. We note that the time limitations set forth in § 47-33a apply only to actions for specific performance. Section 47-33a (c) provides: "Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced."

case, whether the trial court properly refused to consider evidence of the intent of Chary D. Nash and H. Franklin Nash, Jr., that was not included in the deed and option contract as recorded on the land records.

## I

The appropriate starting point for our analysis is the relevant language of § 47-33a (a), as this statute is at the core of the appeal and provides: "No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property *or under an option to purchase real property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed,* unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325." (Emphasis added.)

We now set forth the relevant language from the May 16, 1977 deed. The first part of the deed recorded on the land records[5] detailed the transaction between Chary D. Nash and H. Franklin Nash, Jr., for the sale of the first piece. The deed then established the option contract: "Together with the option to purchase for One Dollar ($1.00) the following described pieces or parcels of land herein called Second Piece and Third Piece . . . ."[6] No date was provided for the performance of the option

---

[5] "Our legislature has expressed a clear preference for recording real property conveyances." *Trumbull* v. *Palmer*, 104 Conn. App. 498, 509, 934 A.2d 323 (2007), cert. denied, 286 Conn. 905, 944 A.2d 981 (2008).

[6] The May 16, 1977 warranty deed is the only agreement signed by Chary D. Nash, the grantor, and H. Franklin Nash, Jr., the grantee. We confine our analysis to this document. Contrary to the suggestion in the dissent, we do not read § 47-33a to require the date to exercise the option to be found in the recording deed. Under the facts of this case, the deed is simply where the agreement is located.

contract, and the option contract was not extended pursuant to § 47-33a (b).

This court has stated that "[g]enerally, a claim for specific performance of a contract for the sale of realty must be brought within one year of the specified date of closing or no more than eighteen months from the date of the contract's execution." *McNeil* v. *Riccio*, 45 Conn. App. 466, 471, 696 A.2d 1050 (1997). In this case, the contract was executed on May 16, 1977, and it does not contain a specific time for performance. Accordingly, we agree with the trial court that, pursuant to § 47-33a (a), the plaintiff needed to commence the action for specific performance by November 16, 1978. In support of our conclusion, we note that the statutory language "eighteen months after the date on which the *agreement was executed*"; (emphasis added) General Statutes § 47-33a (a); refers to when the executory contract was executed and not to when the option was exercised. In this case, the eighteen month time period commenced on May 16, 1977, when Chary D. Nash and H. Franklin Nash, Jr., executed the contract for the purchase of the first piece and the option contract with respect to the second piece and third piece. The plaintiff's attempt in 2010 to exercise the option contract, therefore, was untimely pursuant to § 47-33a.

The plaintiff argues that *Texaco Refining & Marketing, Inc.* v. *Samowitz*, supra, 213 Conn. 676, and *Battalino* v. *Van Patten*, supra, 100 Conn. App. 155, support her claim that the eighteen month time period did not begin until she attempted to exercise the option contract in 2010. The trial court determined that these cases were inapposite. We agree that these cases are factually and legally distinguishable.

In *Texaco*, the named plaintiff and the defendants had entered into a long-term lease relationship. *Texaco Refining & Marketing, Inc.* v. *Samowitz*, supra, 213

Conn. 677–78. Under the lease agreement, the plaintiff had the exclusive opportunity to purchase the premises for $125,000 after the fourteenth year of the lease's initial term. Id., 678. On August 14, 1987, the plaintiff provided notice of its exercise of the option to purchase. Id. The defendants refused to proceed with transfer of the property, and the plaintiff commenced an action for specific performance on December 30, 1987. Id., 678–79. The trial court found in favor of the plaintiff and rejected the defendants' statutory and common-law defenses. Id., 679.

On appeal, the defendants argued that the eighteen month time period embodied in § 47-33a (a), which they construed as a statute of limitations, commenced either eighteen months after the lease had been executed or on the fourteen year anniversary of its execution. Id., 680. Our Supreme Court rejected the defendants' broad interpretation of § 47-33a (a) in the context of an option to purchase real property in a commercial lease. Id., 681–82. Instead, it concluded that a more reasonable interpretation of the legislature's intent was that it applied "more narrowly as a constraint only upon the performance of the option once the lessee has exercised its right to convert the option into a binding executory agreement of the purchase . . . ." Id., 682. Accordingly, the court held that the time constraints set forth in § 47-33a (a) did not apply until the plaintiff exercised the option to purchase contained in the lease between the parties. Id., 683.

This court applied the holding of *Texaco* in *Battalino* v. *Van Patten*, supra, 100 Conn. App. 155. In *Battalino*, the parties entered into a lease and option to purchase agreement for a parcel of unimproved land located between their homes. Id., 157. The lease commenced on May 1, 1989, ran for a period of four years and could be renewed for an additional four year term and then a two year term. Id. The option to purchase stated that

after the initial lease period, the plaintiff had the right to purchase the property and that he would be eligible to receive certain monetary credits. Id., 157–58. In February, 2004, the parties extended the lease until March 31, 2004. Id., 158. At that time, the defendant indicated that the plaintiff retained the option to purchase. Id. In March, 2004, the plaintiff exercised his option to purchase, and the defendant refused to sell him the property. Id., 159. The plaintiff commenced an action for specific performance in June, 2004. Id. The trial court determined that the plaintiff validly had exercised the option to purchase and ordered the defendant to convey the property to him. Id.

On appeal, the defendant argued that § 47-33a (a) precluded the plaintiff's claim for specific performance. Id., 160. The defendant contended that the right to specific performance terminated one year after the final lease renewal period had ended. Id., 161. Citing *Texaco*, we stated: "The statute does not apply to an option contained in a long-term lease until the option has been exercised." Id. We rejected the defendant's attempt to distinguish *Texaco* and determined that § 47-33a (a) did not bar the plaintiff's action for specific performance. Id., 162.

The present case, however, is distinguishable from both *Texaco* and *Battalino*. Those cases involved long-term leases. The facts here involve a 1977 contract between Chary Nash and H. Franklin Nash, Jr., for the sale of one parcel of land and an option to purchase two additional parcels. Moreover, in *Texaco* and *Battalino*, the contract between the parties contained a "waiting" period before the option to purchase could be exercised. In *Texaco*, the option to purchase did not ripen until fourteen years after the lease was executed. *Texaco Refining & Marketing, Inc.* v. *Samowitz*, supra, 213 Conn. 678. Additionally, the option to purchase

remained in effect as long as the lease did. Id. In *Battalino*, the option to purchase was not effective until four years after the commencement of the lease. *Battalino* v. *Van Patten,* supra, 100 Conn. App. 157. Thus, in those cases, the explicit terms of the leases prevented the time periods of § 47-33a (a) from running at the time the lease was executed. Additionally, both options remained valid so long as the lease was in effect. Thus, the only starting point or trigger for § 47-33a (a) was when the option to purchase was exercised. Such considerations are absent in the present case.

We agree, therefore, with the trial court that *Texaco* and *Battalino* are inapposite to the present case. Instead, the general rule of *McNeil* v. *Riccio,* supra, 45 Conn. App. 471, applies. The drafters of the option contract could have included a specific future event to trigger the time period of § 47-33a (a). See *Funaro* v. *Baisley,* 57 Conn. App. 636, 638–39, 749 A.2d 1205 (time period for performance of option to purchase was triggered by death of grantor), cert. denied, 254 Conn. 902, 755 A.2d 218 (2000). The option in the present case lacks such a provision. Therefore, we conclude that the court properly determined that, under the facts and circumstances of this case, the time limitation of § 47-33a (a) was triggered by the execution of the contract in May, 1977, and because the option to purchase contained no date for performance, the plaintiff had eighteen months to commence an action for specific performance.

## II

We now turn to the issue of whether the trial court properly refused to consider evidence of the intent of Chary D. Nash and H. Franklin Nash, Jr., that was not included in the warranty deed and option contract as recorded on the land records. The plaintiff attached an affidavit to her opposition to the defendants' motions

for summary judgment. That affidavit contained the following: "The reason that the parcels identified as the second piece and the third piece were not conveyed outright when the first piece was conveyed in 1977 was to allow Chary D. Nash to continue to receive favorable tax status for those parcels . . . . My late husband, H. Franklin Nash, Jr., and I acquired the parcel identified as the first piece and the option to acquire the second piece and third piece upon the death of Chary D. Nash, with the understanding that said parcels would be conveyed to us upon the death of Chary D. Nash pursuant to the deed that she signed in 1977. It was always our understanding that my late husband and I would own the parcels subject to the option upon Chary D. Nash's death." The plaintiff subsequently submitted a supplemental affidavit that included the following: "I have personal knowledge of all facts stated in the affidavit dated April 26, 2011 . . . . My personal knowledge is from statements made by Chary D. Nash and her husband, Harold Nash to both me and my late husband, H. Franklin Nash Jr. The statements were made at the time of the real estate closing at the office of the Attorney who conducted the closing. . . . At the time of the closing, both Chary D. Nash and Harold Nash told my late husband and me that they did not want us taking any action on owning the land until they had both passed away, and that this was due to tax reasons."

In August, 2011, during the pendency of the motions for summary judgment, the plaintiff moved for permission to file a supplemental memorandum of law, stating that "she [had] obtained through discovery a document that is relevant to the issues pending before the [c]ourt, which document should be considered by the [c]ourt . . . ." Attached as an exhibit to the plaintiff's proposed supplemental memorandum of law was "a handwritten document which bears the signature of Chary D. Nash, the grantor of the option which is the subject of the

complaint, which is dated the same day as the deed granting the option to her son, H. Franklin Nash, Jr., and which relates directly to the date of the performance of the option." This document provides in relevant part: "Also Franklin [H. Nash, Jr.] has option to buy for $1.00 a remaining 46½ acres if house is sold or when both Harold & Chary [D. Nash] are dead."

The court denied the plaintiff's motion for permission to file a supplemental memorandum of law in opposition to the defendants' motions for summary judgment. Specifically, it stated: "The exhibit is a handwritten note purportedly bearing the signature of Chary D. Nash, who is now deceased. The plaintiff has not submitted to the court any documentation attesting to the authenticity of the exhibit. Absent admissible supporting documentation, the court cannot consider the exhibit."

The court also rejected the plaintiff's argument that it should consider the intent of the parties at the time that the option to purchase the second piece and third piece was granted. It noted that the statutory language of § 47-33a did not permit the court to consider the intent of the parties where the agreement is silent as to the date of performance of the option. The court further concluded that even if the parties' intent were an issue, the option to purchase was clear and unambiguous and that a determination of the intent would be made by a fair and reasonable construction of the written words of the contract executed on May 16, 1977.

On appeal, the plaintiff argues that due to the absence of the date for performance of the option, the court should have considered the intent of the parties. She also claims that the court should have examined the signature of Chary D. Nash on the handwritten note and compared it with her signature on the deed to establish the note's authenticity. We are not persuaded.

We begin with the plaintiff's claim that the court should have considered the handwritten note that purportedly bore the signature of Chary D. Nash. Procedurally, this matter was presented to the trial court by way of a motion for permission to file a supplemental memorandum of law in opposition to the defendants' motions for summary judgment. The handwritten note at issue was attached to the plaintiff's proposed supplemental memorandum of law filed with her motion for permission to file the supplemental memorandum of law. The court concluded that in the absence of admissible supporting documentation attesting to the authenticity of the handwritten note, it could not consider it, and therefore denied the plaintiff's motion.

"[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . Mere assertions of fact . . . are insufficient to establish the existence of [an issue of] material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) *Taylor* v. *Barberino*, 136 Conn. App. 283, 287–88, 44 A.3d 875 (2012). "[W]e note that [o]nly evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment. . . . Practice Book § [17-45], although containing the phrase *including but not limited to*, contemplates that supporting documents to a motion for summary judgment be made under oath or be otherwise reliable. . . . [The] rules would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment. . . . Therefore, before a document may be considered by the court [in connection with] a motion for summary judgment, there must

be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. The requirement of authentication applies to all types of evidence, including writings . . . . Conn. Code Evid. § 9-1 (a), commentary." (Emphasis in original; internal quotation marks omitted.) *Gianetti* v. *Anthem Blue Cross & Blue Shield of Connecticut*, 111 Conn. App. 68, 72–73, 957 A.2d 541 (2008), cert. denied, 290 Conn. 915, 965 A.2d 553 (2009); see also *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436, 696 A.2d 1254 (1997). Last, we are mindful that the decision to reject the handwritten note in this case presents an evidentiary issue, subject to the abuse of discretion standard of review by this court. See *Bruno* v. *Geller*, 136 Conn. App. 707, 716, 46 A.3d 974, cert. denied, 306 Conn. 905, 52 A.3d 732 (2012).

The plaintiff, citing *New Milford Savings Bank* v. *Jajer*, Superior Court, judicial district of Litchfield, Docket No. CV-92-0061073 (August 30, 2005), argues that the trial court could have compared the signature on the handwritten note with Chary D. Nash's signature on the deed to determine the handwritten note's authenticity. The defendants counter that (1) this argument is raised for the first time on appeal, (2) the plaintiff failed to seek an articulation as to whether the court could have made a finding regarding the signatures on the deed and handwritten note, (3) the plaintiff failed to provide authority that the court may authenticate a signature on a document in the context of a motion for summary judgment, and (4) the plaintiff failed to supply any foundational information such as who wrote the handwritten note, the note's purpose or what property is referenced. We conclude that the court did not abuse its discretion in denying the plaintiff's motion for permission to file a supplemental memorandum of law in opposition to the defendants' motions for summary judgment.

We note that the plaintiff never specifically requested the trial court to compare the signature of Chary D. Nash from the deed with the signature on the handwritten note. Although the court *may* compare signatures to determine authorship, the plaintiff has not cited any case or treatise for the proposition that it *must* do so. See, e.g., C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 9.6.3, pp. 628–29. As observed by the trial court, the plaintiff failed to produce a certified copy or an affidavit by a person with personal knowledge that the handwritten note was a true and accurate representation of what the plaintiff claimed it to be. Although there may have been other methods to establish authenticity of the note, we note that it was the plaintiff's burden to do so. The plaintiff elected to seek to file a supplemental memorandum of law in opposition to the motions for summary judgment. The plaintiff's motion for permission to file the supplemental memorandum of law stated that the note bore the signature of Chary D. Nash and was signed on the same date on which the warranty deed was executed. Notably, she failed to request the court to compare the signature on the note with the one on the warranty deed, provide an affidavit attesting to its authenticity, or in any way attempt to make a preliminary showing of its genuineness to the court. As a result, the court concluded that the plaintiff had failed to establish the authenticity of the handwritten note. This conclusion was not an abuse of the court's discretion. See, e.g., *Wilderman* v. *Powers*, 110 Conn. App. 819, 828, 956 A.2d 613 (2008).

Finally, we address the plaintiff's claim that the court should have considered the intent of the parties. The plaintiff argues that the option contract was ambiguous, due to the absence of a date for performance, and that therefore the court was free to consider evidence outside of the four corners of the contract. The defendants counter that the court correctly determined that the

parties' intent was clearly and unambiguously expressed in the option contract and that the court therefore properly limited its analysis to the language contained in the option contract. They further contend that the court properly concluded that nothing in § 47-33a (a) permitted the use of extrinsic evidence to determine the intent of the contracting parties.

"[W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . [T]he interpretation and construction of a written contract present only questions of law, within the province of the court . . . so long as the contract is unambiguous and the intent of the parties can be determined from the agreement's face. . . . Contract language is unambiguous when it has a definite and precise meaning about which there is no reasonable basis for a difference of opinion." (Citations omitted; internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 20, 804 A.2d 865 (2002). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188–89, 819 A.2d 765 (2003); see also *Milford Paintball, LLC* v. *Wampus Milford Associates, LLC*, 137 Conn. App. 842, 852 n.8, 49 A.3d 1072 (2012). Put another way, "[i]n Connecticut,

while the interpretation of a contract is generally a question of fact, when the language of a contract is capable of only one interpretation the court need not look outside the four corners of the contract or make any findings of fact and, therefore, the interpretation of the contract involves only questions of law." *Hedberg* v. *Pantepec International, Inc.*, 35 Conn. App. 19, 28, 645 A.2d 543, cert. granted on other grounds, 231 Conn. 927, 648 A.2d 879 (1994) (appeal withdrawn February 21, 1995); see also *Poole* v. *Waterbury*, 266 Conn. 68, 88–89, 831 A.2d 211 (2003).

We conclude that the option contract contained definitive language as to the parties' commitments.[7] The fact that Chary D. Nash and H. Franklin Nash, Jr., did not include a time frame for performance of the option to purchase the second piece and third piece does not result in an ambiguous contract requiring extrinsic evidence to determine intent. The definite and precise meaning of the language of the option contract, about which there is no reasonable basis for a difference of

[7] The dissent agrees with our conclusion that the terms of the deed are clear and unambiguous. It then turns to the issue of whether the deed was an integrated agreement. This claim, however was not raised in the plaintiff's brief to this court. The plaintiff, in passing, mentioned when the use of parol evidence is appropriate and cited to law for the general proposition that the intent of the parties is garnered in light of the parties' situation.

Our Supreme Court recently stated: "We have long held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide [an appeal] before it on a basis that the parties never have raised or briefed. . . . To do otherwise would deprive the parties of an opportunity to present arguments regarding those issues." (Citations omitted.) *Sabrowski* v. *Sabrowski*, 282 Conn. 556, 560, 923 A.2d 686 (2007). "If the Appellate Court decides to address an issue not previously raised or briefed, it may do so only after requesting supplemental briefs from the parties or allowing argument regarding that issue. *State* v. *Dalzell*, 282 Conn. 709, 715, 924 A.2d 809 (2007)." (Internal quotation marks omitted.) *Haynes* v. *Middletown*, 306 Conn. 471, 474, 50 A.3d 880 (2012). Even if we were to read the plaintiff's brief with an expansive eye and conclude that she raised the issue of an integrated contract, we would decline to reach the merits as a result of an inadequate brief.

opinion, was that the parties did not include a date for performance. See *Paul Revere Life Ins. Co.* v. *Pastena,* 52 Conn. App. 318, 322, 725 A.2d 996, cert. denied, 248 Conn. 917, 734 A.2d 567 (1999). The trial court, therefore, correctly limited its analysis to the language contained in the option contract when it considered the application of § 47-33a (a).

In closing, we acknowledge the nature of claims for specific performance. "[A]n action for specific performance of a contract to sell real estate is an equitable action and is to be determined by equitable principles. . . . The granting of specific performance of a contract to sell land is a remedy which rests in the broad discretion of the trial court depending on all of the facts and circumstances when viewed in light of the settled principles of equity. . . . If, under the circumstances, specific performance would be inequitable, the relief to be accorded rests in the trial court's sound discretion, to be exercised in light of the equities of the case and using reason and sound judgment." (Citations omitted; internal quotation marks omitted.) *Webster Trust* v. *Roly,* 261 Conn. 278, 284, 802 A.2d 795 (2002). Our legislature, however, has enacted § 47-33a. This statute acts as a temporal limitation on when a party may seek specific performance. General Statutes § 47-33a (c). In deciding these cases, we must consider both the common-law rules regarding the equitable nature of specific performance and the text of the applicable statutes from the legislature.

Finally, we agree with following statement found in the trial court's well reasoned memorandum of decision: "[T]he court notes that the legislative history of General Statutes § 47-33a reveals that the statute was designed to prevent unexercised interests in real property from remaining on title indefinitely and to render title to property encumbered by such interests marketable within a reasonable period of time." See 8 H.R.

Proc., Pt. 10, 1959 Sess., pp. 4109–10 and 4112–13; Public Acts 1959, No. 59-550; Conn. Joint Standing Committee Hearings, Judiciary and Governmental Functions, Pt. 5, 1959 Sess., pp. 1966–69.[8]

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

LAVERY, J., dissenting. I respectfully dissent because I conclude that the trial court incorrectly interpreted both General Statutes § 47-33a and the law of contracts to bar admission of evidence outside of the recorded deed for the purpose of determining whether the deed constituted the complete and exclusive agreement of the parties. As a result, the trial court refused to consider evidence that the complete agreement contained a date for exercising the option referred to in the deed. Because neither § 47-33a nor contract law bars introduction of parol evidence to show a consistent additional term in an agreement to convey real estate, and because there was such evidence before the court, the defendants, Betsey N. Stevens and Evelene N. Rabou, did not meet their burden to make a showing "that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). Additionally, I disagree with the majority's conclusion that the handwritten note the plaintiff, Carol Ann Nash, sought to have the trial court consider, was not properly authenticated and therefore, not admissible at the summary judgment stage. Accordingly, I would reverse the summary judgment rendered

---

[8] The dissent takes the view that this concern is alleviated by General Statutes § 47-33f. We note that burdening the title to property for forty years runs contrary to the purpose of § 47-33a, which is, in part, to make property interests marketable in a reasonable amount of time.

in favor of the defendants and remand the case for trial with direction to consider all relevant evidence, including the plaintiff's affidavits and the handwritten note, in determining what constitutes the complete agreement of the parties.

I begin by providing an alternative statement of facts. The following facts, as viewed in the light most favorable to the plaintiff, are relevant to this appeal. On May 16, 1977, Chary D. Nash (Chary Nash) executed a warranty deed conveying to her son, H. Franklin Nash, Jr. (Franklin Nash), a parcel of property known as the "First Piece" together with "the option to purchase for One Dollar ($1.00) the following described pieces or parcels of land herein called the Second Piece and the Third Piece . . . ." During the real estate closing, Chary Nash explained to Franklin Nash and his wife, the plaintiff, and they accepted the conveyance with the understanding, that the option was not to be exercised until both Chary Nash and her husband, Harold Nash, had died, because Chary Nash and Harold Nash wanted to continue to take advantage of the tax benefits of owning the parcels. The deed, which contained the essential terms of the conveyance and the option, was recorded in the municipal land records. It was signed by Chary Nash, but not by Franklin Nash or the plaintiff. On the same day, Franklin Nash executed a warranty deed conveying to himself and to the plaintiff, as joint tenants, the first piece and the option to purchase the second and third piece. Also on the same day, Chary Nash memorialized in handwriting the essential terms of the conveyance and the option agreement, as well as the conditions under which the option could be exercised.[1] The handwritten note accurately reflected all of

---

[1] The note states in relevant part: "Chary deeded $3^{1/2}$ acres to Franklin for $1.00. Franklin & Carol Ann each to give Chary a gift of $3,000 (total $6,000) in appreciation. Also Franklin has option to buy for $1.00 a remaining $46^{1/2}$ acres if house is sold or when both Harold and Chary are dead."

the terms in the deed as well as the consistent additional term agreed to at the time of closing, specifying that the option was not to be exercised until after Chary Nash and Harold Nash had sold their house or until both of them had died. Chary Nash included the date on the note and signed it. This handwritten note was not recorded with the deed. The note also contained an annotation dated June 6, 1977, and signed by Chary Nash, indicating that Chary Nash had received the agreed $6000 in consideration from Franklin Nash and the plaintiff. On September 22, 2009, Franklin Nash and the plaintiff executed a quitclaim deed conveying the first piece and the option to the plaintiff as trustee of the Carol Ann T. Nash revocable trust. As a result of the mutually agreed condition precedent to exercising the option, requested by the grantor, neither Franklin Nash nor the plaintiff sought to exercise the option while Harold Nash and Chary Nash were alive.

On November 22, 2009, Chary Nash died testate, leaving her entire estate to her three children: Franklin Nash and the defendants. All three children were appointed executors of her estate. On February 6, 2010, Franklin Nash died testate, leaving his entire estate to the plaintiff. On April 27, 2010, the plaintiff notified the defendants that she was exercising the option to purchase the second and third piece referred to in the deed and in Chary Nash's handwritten note. The defendants refused to honor the option and, subsequently, the plaintiff submitted a notice of claim for specific performance against the estate of Chary Nash. The claim was denied.

On July 15, 2010, the plaintiff commenced this action seeking specific performance of the option. The defendants subsequently moved for summary judgment on the plaintiff's complaint for specific performance, arguing that it was time barred by § 47-33a.[2] In opposing

[2] General Statutes § 47-33a provides: "(a) No interest in real property existing under an executory agreement for the sale of real property or for the sale of an interest in real property or under an option to purchase real

summary judgment, the plaintiff submitted two affidavits describing Franklin Nash's and Chary Nash's oral agreement to Chary Nash's condition that they not exercise the option until Chary Nash and Harold Nash had died. Sometime after the plaintiff filed her affidavits, the defendants responded to a discovery request from the plaintiff. Among the documents produced by the defendants was the handwritten note, which corroborated the facts in the affidavits, including the condition for exercising the option. The plaintiff's attorney then filed a motion seeking permission to file a supplemental memorandum of law. The accompanying memorandum described the note, its contents and the circumstances under which it was obtained. On October 4, 2011, the trial court denied the motion for permission to submit the supplemental memorandum of law, ruling that because the plaintiff had not submitted any supporting documentation attesting to the note's authenticity, the note could not be considered. On the same date, the trial court rendered summary judgment in favor of the defendants. In its memorandum of decision rendering summary judgment, the trial court ruled that because the recorded deed did not contain a date for exercising

property shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325.

"(b) The interest may be extended only by reexecution of the written agreement or by execution of a new written agreement, provided the agreement, whether reexecuted or newly executed, shall be recorded as directed by sections 47-10 and 47-17. The period provided by this section shall not otherwise be extended, whether because of death, disability or absence from the state or for any other reason. Upon the expiration of an interest the title to property affected by the interest shall not thereafter be considered unmarketable because of the expired interest.

"(c) Nothing in this section shall be construed to limit or deny any legal or equitable rights a party may have under the agreement except the right to have the agreement specifically enforced."

the option, and because no extension of the contract had been executed pursuant to § 47-33a (b), the exercise of the option was time barred by § 47-33a (a).

If ever a case illustrated the saying that "no good deed goes unpunished," this is it. Viewing the facts in the light most favorable to the plaintiff, she and her late husband did what his mother asked, as expressed in their oral and written agreements, waiting until after her death to exercise the option to purchase the remaining part of her land. As a result of the forbearance of the plaintiff and her late husband, which honored the complete agreement between the parties, the plaintiff has been deprived of the benefit of the bargain and of her day in court.

I

I first address the majority's conclusion that because the recorded deed did not contain the date for performance with respect to exercising the option, the agreement did not contain a date for performance. This case hinges on principles of statutory interpretation and contract interpretation, as well as the proper standard for deciding a motion for summary judgment.

"Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 625, 57 A.3d 391 (2012).

Practice Book § 17-49 provides: "The judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In seeking summary judgment, it is the movant who

has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly*, supra, 180 Conn. 434. "A material fact is simply a fact which will make a difference in the result of the case . . . and a summary disposition should be rendered in the limited instances where the evidence is such that no room for disbelief could exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party." (Citation omitted; internal quotation marks omitted.) *Yanow* v. *Teal Industries, Inc.*, 178 Conn. 262, 268–69, 422 A.2d 311 (1979).

To determine whether a genuine issue of material fact existed in this case, we first must determine whether § 47-33a bans evidence not contained in the recorded deed. We then must determine not, as the majority concludes, whether the deed in this case was ambiguous, but instead, what constitutes the agreement between the parties, and specifically, whether that agreement contained a date for exercising the option referred to in the deed. For the reasons discussed herein, I conclude that the trial court incorrectly determined that § 47-33a bans evidence outside the recorded deed, and that because the recorded deed did not contain a date for exercising the option, the agreement between the parties did not contain such a date.

"The process of statutory interpretation involves the determination of the meaning of the statutory language

as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 679, 986 A.2d 290 (2010).

By the plain and unambiguous terms of § 47-33a (a), no interest in real estate, including an option to buy real estate, "shall survive longer than one year after the date provided in the agreement for the performance of it or, if the date is not so provided, longer than eighteen months after the date on which the agreement was executed, unless the interest is extended as provided herein or unless action is commenced within the period to enforce the agreement and notice of lis pendens is filed as directed by section 52-325." General Statutes § 47-33a (a). Only if the date is not provided in the *agreement* does the statute impose a default deadline of eighteen months after the execution of the agreement. If the date is provided in the agreement, the plaintiff must commence action within one year of the date. General Statutes § 47-33a. The statute requires that the agreement provide a date. It does not require that the date be provided in the *recorded deed,* and it does not require recording the original agreement. Nor does the

statute require recording the date for exercising the option—unless the interest is extended *after the execution of the original agreement.* General Statutes § 47-33a (b). To read § 47-33a to exclude terms that were included in the agreement because they were not included in the recorded deed would improperly impose a recording requirement that is not in the statute. The legislature, when it has wanted to impose a recording requirement, has done so explicitly, for example, in General Statutes § 47-10, which extinguishes the interests of some grantees in favor of subsequent grantees when the formers' interests are not recorded, and even in subsection (b) of § 47-33a. Had it wanted to impose a recording requirement on original agreements, as it did on extensions and subsequent agreements in the same statute, the legislature would have done so explicitly.

For the purpose of applying § 47-33a, the death of the grantor may serve as the operative event for exercising an option. *Funaro* v. *Baisley,* 57 Conn. App. 636, 639, 749 A.2d 1205, cert. denied, 254 Conn. 902, 755 A.2d 218 (2000).

In this case, no written agreement was signed by all the parties. Evidence viewed in the light most favorable to the plaintiff indicates that the agreement constituted more than just the recorded deed, and that the complete agreement, which included the contemporaneous oral agreement, contained a date for exercising the option. The plaintiff alleged in the first of two affidavits opposing summary judgment that the date for exercising the option was provided by the grantor, Chary Nash, at the time the agreement was finalized and memorialized by the signing of the deed.[3] The two affidavits together,

---

[3] Because I conclude that the agreement between the parties provided a date for exercising the option and the plaintiff acted both to exercise the option and to seek specific performance within one year of that date, the eighteen month time limit in § 47-33a did not apply. I agree, however, with the majority that the facts in *Texaco Refining & Marketing, Inc.* v. *Samowitz,*

evaluated in the light most favorable to the plaintiff, indicate that at the time of the closing, the parties agreed that the grantees would not exercise the option until both the grantor and her husband had died—a condition precedent that benefited the grantor. There is no dispute that such oral agreement to a consistent, additional nonessential term was not recorded, but nothing in § 47-33a requires such recording because the agreement as to the date for performance did not take place after the original agreement but at the same time as, and as part of, the original agreement.[4]

In this case, the plaintiff sought to exercise the option and filed a claim seeking specific performance, both within one year of the grantor's death, thereby meeting the requirements of § 47-33a. The defendants argue that failure to record the date of the option would cloud title indefinitely, preventing the subsequent sale of the property and working to the prejudice of subsequent purchasers.[5] This argument ignores two relevant considerations. First, the Marketable Title Act, General

213 Conn. 676, 570 A.2d 170 (1990), and *Battalino* v. *Van Patten*, 100 Conn. App. 155, 917 A.2d 595, cert. denied, 282 Conn. 924, 925 A.2d 1102 (2007), are distinguishable in part from the facts here. Those cases concerned whether, when an option agreement in a renewable lease does not contain a date of performance, the default date of performance under § 47-33a is the date that the agreement is executed or the date that the option is exercised. As I note in footnote 7 of this dissenting opinion, however, *Battalino* v. *Van Patten* is relevant because in that case, this court upheld the use of extrinsic evidence of an unrecorded agreement to determine whether an option had been extinguished under § 47-33a where the written lease and any express extension periods had expired, the written lease did not contain a trigger date and there was no finding of ambiguity.

[4] I note also that the statute of frauds does not bar evidence that the parties agreed orally to a nonessential term as part of an agreement to convey real estate. *SS-II, LLC* v. *Bridge Street Associates*, 293 Conn. 287, 294, 977 A.2d 189 (2009). "The governing legal principles are well established. The statute of frauds requires that the essential terms and not every term of a contract be set forth therein. . . . The essential provisions of a contract are the purchase price, the parties, and the subject matter for sale." (Citation omitted; internal quotation marks omitted.) Id.

[5] The majority cites the following quotation from *Trumbull* v. *Palmer*, 104 Conn. App. 498, 509, 934 A.2d 323 (2007), cert. denied, 286 Conn. 905,

Statutes § 47-33b et seq., extinguishes interests in real estate that are not recorded within forty years after their creation. General Statutes § 47-33f. A potential purchaser performing a title search would discover the existence of an option less than forty years old, and therefore be on notice that due diligence would be required to determine the exact terms and conditions of the option. If the option was more than forty years old and not recorded, it would no longer survive, so there is no danger that the cloud on title would remain forever. Id. Second, the rights of a subsequent purchaser are not at issue in this case. This case involves a dispute between the grantee's successor and heir and the grantor and her heirs, not clouds on title that might affect subsequent purchasers. Section 47-10 (a) provides in relevant part: "No conveyance shall be effectual to hold any land against *any other person but the grantor and his heirs*, unless recorded on the records of the town in which the land lies. . . ." (Emphasis added.) That statute makes clear that the grantor and her heirs are bound by agreements to convey real estate even when they are not recorded. "It is indeed the law that a grantor may not set up the records as a defense when he has made express representations contrary to the record title and the grantee has relied upon these." *Stanio* v. *Berner Lohne Co.*, 7 Conn. Supp. 452, 454 (1939), aff'd, 127 Conn. 431, 17 A.2d 502 (1941). The

944 A.2d 981 (2008): "Our legislature has expressed a clear preference for recording real property conveyances." As authority for that statement, this court in *Trumbull* cited General Statutes §§ 47-10 and 12-68. Section 47-10 provides explicitly that conveyances are still valid as between the grantor and grantee even when they are not recorded. Section 12-68 gives a grantor the right to double recovery of the tax paid when the grantor is assessed property taxes because the grantee failed to record the conveyance. That case, and both statutes, make clear that despite its preference for recording conveyances to protect bona fide purchasers, the legislature has not expressed a preference for allowing a grantor or grantee to escape its obligations under a real estate contract because the contract, or part of it, was not recorded.

production by the defendants during discovery of the handwritten note makes clear that the grantor was aware of and consented to the restriction on exercising the option, and received consideration for the land and the option together. That consideration included the $6000 she received *and the agreement not to exercise the option while she was alive.* Franklin Nash and the plaintiff honored the full agreement, exercising for decades the forbearance that it required. Furthermore, were the estate to seek to sell the property within the forty year period specified in the Marketable Title Act, and had the option not been exercised within one year after Chary Nash's death, the estate would be free to file an action to settle title under General Statutes § 47-31[6] or to defend an action similar to the one filed by the plaintiff, using the same evidence that they produced during discovery. Under the terms of § 47-33a and the complete agreement between the parties, the option in this case could not survive unless, as here, the plaintiff exercised it within one year after the death of Chary Nash. Therefore, I conclude that § 47-33a does not bar evidence of a contemporaneous agreement that provides the date for exercising an option, and the fact that such contemporaneous agreement is not recorded does not trigger the eighteen month time limit in the statute.

## II

Having concluded that under § 47-33a, an unrecorded contemporaneous agreement may provide the date for

[6] General Statutes § 47-31 (a) provides: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought

exercising an option, I now turn to the court's and the majority's conclusion that evidence of such an agreement could not be considered because the recorded deed was unambiguous. I agree with the majority that the terms of the deed are clear and unambiguous, but that is not relevant in this case, because completely separate from—and prior to—any determination of whether terms in the agreement or the agreement itself are ambiguous, a court reviewing a contract first must determine what constitutes the complete agreement between the parties. "Whether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule." 2 Restatement (Second), Contracts § 209 (2) (1981). In other·words, the relevant inquiry is whether a document purporting to represent the agreement between the parties is fully integrated, meaning that it represents the complete and exclusive agreement of the parties, or if, instead, it also includes terms agreed to orally or in a separate writing.

Section 210 (1) of the Restatement (Second) of Contracts provides: "A completely integrated agreement is an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement." "The definition in Subsection (1) is to be read with the definition of integrated agreement in § 209, to reject the assumption sometimes made that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon. Even though there is an integrated agreement, consistent additional terms not reduced to writing may be shown, unless the court finds that the writing was assented to by both parties as a complete

---

whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

and exclusive statement of all the terms." Id., § 210, comment (a).

The majority does not address this question, and none of the cases it cites in upholding the trial court's exclusion of parol evidence considered whether a contract could be supplemented by consistent additional terms. See, e.g., *Paul Revere Life Ins. Co.* v. *Pastena*, 52 Conn. App. 318, 322–24, 725 A.2d 996 (interpretation of plaintiff's statements and answers on insurance application, which by written terms were made part of insurance contract), cert. denied, 248 Conn. 917, 734 A.2d 567 (1999); see also, e.g., *Christian* v. *Gouldin*, 72 Conn. App. 14, 804 A.2d 865 (2002) (summary judgment proper where party opposing summary judgment sought to introduce extrinsic evidence that contradicted express terms of agreement). The question before the court is not the meaning of terms in the deed, but whether consistent additional terms outside the deed may be part of the agreement.[7] As discussed herein, they may

[7] I disagree with the majority's conclusion that the plaintiff did not raise this issue in her brief, and that therefore, this court may not consider it. First, the defendants' brief discussed at length whether the fact that a contract is unambiguous on its face means that § 47-33a precludes the use of extrinsic evidence to supplement that contract and asserted that the plaintiff's position "belies . . . black letter contract law . . . ." In her brief, the plaintiff addresses the role of the parties' intent, citing case law that discusses the role of parol evidence in determining whether specific performance is appropriate. In her reply brief, the plaintiff explicitly addresses an issue raised in the defendants' brief—that the plaintiff was "attempting to vary the clear terms of the 1977 option"—by citing to the same case law involving the application of § 47-33a, in which this court held that parol evidence is allowed to show consistent additional terms even when contracts are integrated, and that courts may consider such parol evidence in deciding whether awarding specific performance would be equitable under the circumstances. See *Battalino* v. *Van Patten*, 100 Conn. App. 155, 168, 917 A.2d 595, cert. denied, 282 Conn. 924, 925 A.2d 1102 (2007). The defendants' brief also recites the circumstances of *Battalino*, in which this court allowed parol evidence of an unrecorded lease extension agreement to determine the trigger date for applying § 47-33a, where parol evidence showed that a valid lease was a condition for exercising the option to purchase and that the option survived after the lease extension terms specified in the lease, despite the fact that the recorded lease provided for any possible lease

be included, and in this case, viewing the evidence in the light most favorable to the nonmoving party, they are.

Nothing in Connecticut case law prevents the consideration of evidence of consistent additional terms that supplement a deed or other agreement for the sale of an interest in real estate. "The parol evidence rule does not of itself . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract concerning matters governed by an integrated contract, but forbids only the use of such evidence to vary or contradict the terms of such a contract. Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant. When offered for that purpose, it is inadmissible not because it is parol evidence, but because it is irrelevant. By implication, such evidence may still be admissible if relevant (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in [a] writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud." (Citation omitted; internal quotation marks omitted.) *TIE Communications, Inc.*

extensions to expire five years before the grantee sought to exercise the option. Id., 166–68. I note also that our plenary review of the summary judgment requires us to interpret and apply contract law, including the relevant sections of the Restatement (Second) of Contracts, to the parties' agreement to determine whether there is a genuine issue of material fact about what the agreement provided.

v. *Kopp*, 218 Conn. 281, 288–89, 589 A.2d 329 (1991); see also *Ziotas* v. *Reardon Law Firm, P.C.*, 111 Conn. App. 287, 293–94, 959 A.2d 1013 (2008) (if writing ambiguous *or does not set forth entire agreement*, court may look to parol evidence to explain ambiguity or add missing term), rev'd in part on other grounds, 296 Conn. 579, 997 A.2d 453 (2010).

A contract that appears to be complete on its face is an integrated agreement "unless it is established by other evidence that the writing did not constitute a final expression." 2 Restatement (Second), supra, § 209 (3). The commentary to § 209, however, makes clear that basic principles of contract law require proof of integration as a determination of fact before excluding any relevant evidence. "Whether a writing has been adopted as an integrated agreement is a question of fact to be determined in accordance with all relevant evidence. The issue is distinct from the issues whether an agreement was made and whether the document is genuine, and also from the issue whether it was intended as a complete and exclusive statement of the agreement." Id., § 209, comment (c). Commentary to § 210 also sheds light on why the court's refusal to consider the affidavits and the handwritten note, especially in deciding a motion for summary judgment, was improper: "A document in the form of a written contract, signed by both parties and apparently complete on its face, may be decisive of the issue *in the absence of credible contrary evidence. But a writing cannot of itself prove its own completeness, and wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties.*" (Emphasis added.) Id., § 210, comment (b). "Incompleteness may also be shown by other writings, which may or may not become part of a completely or partially integrated agreement. Or it may be shown by any relevant evidence, oral or written, that an apparently complete writing never

became fully effective, or that it was modified after initial adoption." Id., § 210, comment (c). "Where writings relating to the same subject matter are assented to as parts of one transaction, both form part of the integrated agreement. Where an agreement is partly oral and partly written, the writing is at most a partially integrated agreement." Id., § 213, comment (a).

Section 214 of the Restatement (Second) of Contracts provides: "Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish (a) that the writing is or is not an integrated agreement; (b) that the integrated agreement, if any, is completely or partially integrated; (c) the meaning of the writing, whether or not integrated; (d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause; [and] (e) ground for granting or denying rescission, reformation, specific performance, or other remedy."

The issues listed in § 214 are to be "determined by the court preliminary to determination of a question of interpretation or to application of the parol evidence rule. . . . Writings do not prove themselves; ordinarily, if there is dispute, there must be testimony that there was a signature or other manifestation of assent. The preliminary determination is made in accordance with all relevant evidence, including the circumstances in which the writing was made or adopted." (Citation omitted.) Id., comment (a). "Evidence of a consistent additional term is admissible to supplement an integrated agreement unless the court finds that the agreement was completely integrated." Id., § 216 (1). "An agreement is not completely integrated if the writing omits a consistent additional term which is (a) agreed to for separate consideration, or (b) such a term as in the circumstances might naturally be omitted from the writing." Id., § 216 (2). "In considering the expressed intent of a contract evidenced, as was this, by multiple

writings, all of the writings should be considered and an endeavor made to ascertain the expressed intent of the contract as a whole." *Schubert* v. *Ivey*, 158 Conn. 583, 587, 264 A.2d 562 (1969). "When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties." *Mongillo* v. *Commissioner of Transportation*, 214 Conn. 225, 229, 571 A.2d 112 (1990).

"Only when an integrated contract exists and its meaning differs from extrinsic evidence offered by one of the parties does the parol evidence rule come into play." 11 R. Lord, Williston on Contracts (4th Ed. 2012) § 33:14, p. 956.

Two things are clear from the deed. First, it contains no integration clause or any words expressing the parties' intent to adopt it as the complete and exclusive agreement of the parties. Second, it contains no terms contradicted by the terms of the oral agreement, as described in the plaintiff's affidavits, or described in the handwritten note. Therefore, I conclude that the deed is not an integrated agreement and that a genuine issue of fact exists as to whether the consistent additional term specifying that the option was not to be exercised until after Chary Nash and Harold Nash had died was part of the agreement.

## III

I now turn to the trial court's conclusion that the handwritten note was not properly authenticated, and therefore, could not be considered. I disagree because I conclude that the note was properly authenticated for the purposes of summary judgment. To the extent its authenticity was at issue, the plaintiff made a prima facie showing that it was genuine, and therefore, the final determination of authenticity should have been made at trial, not at the summary judgment stage. Even without the handwritten note, the plaintiff's affidavits

alone established a genuine issue of material fact about whether the agreement contained a date for exercising the option.

Practice Book § 17-45 provides in relevant part: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. . . ." The majority appears to conclude that the words "included but not limited to" are superfluous, and that documents may be authenticated only by those documents explicitly listed. This conclusion is incorrect for three reasons. First, disclosures are specifically listed as an acceptable form of documentation. Although no case law interprets the meaning of disclosures as used in Practice Book § 17-45, it is logical to conclude that documents produced by the opposing party, documents which would tend to hurt that party's case and which are corroborated by the circumstances and affidavits in the record, are self-authenticating. Second, Practice Book § 1-8 provides for the rules to be "interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice." It would be highly unjust for a case to die on summary judgment because the trial court, based on an excessively narrow reading of the authentication requirement, refused to consider evidence that, if true, showed that one party to a contract was deprived of the benefit of the bargain because she adhered to a condition of the contract. Third, Connecticut courts have a long-standing practice of accepting multiple methods of authentication, which, for the reasons discussed herein, were satisfied in this case.

"The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be." Conn. Code Evid.

§ 9-1 (a). "Authentication is . . . a necessary preliminary to the introduction of most writings in evidence . . . . In general, a writing may be authenticated by a number of methods, including direct testimony or circumstantial evidence. . . . Both courts and commentators have noted that the showing of authenticity is not on a par with the more technical evidentiary rules that govern admissibility, such as hearsay exceptions, competency and privilege. . . . Rather, there need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing of authorship is made to the court, the evidence, as long as it is otherwise admissible, goes to the jury, which ultimately will determine its authenticity. . . . The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be." (Internal quotation marks omitted.) *State* v. *Cooke*, 89 Conn. App. 530, 548, 874 A.2d 805, cert. denied, 275 Conn. 911, 882 A.2d 677 (2005); see also *State* v. *Peay*, 96 Conn. App. 421, 434–35, 900 A.2d 577, cert. denied, 280 Conn. 909, 908 A.2d 541 (2006).

"Under Connecticut law and the Connecticut Code of Evidence, a multitude of methods exist by which a party can demonstrate the authentication of a document, and no single method represents the exclusive means of proving authenticity." *State* v. *Howell*, 98 Conn. App. 369, 379–80, 908 A.2d 1145 (2006). In *Howell*, this court held that the state's introduction of an uncertified facsimile copy of a defendant's previous conviction was admissible when presented in opposition to a motion to dismiss. Id. "At trial, alternate methods of authentication existed, and the state was not limited to authenticating the defendant's 1995 conviction by offering a certified copy. In any event, the state was not required to have in its hands a certified copy of the first conviction prior to trial. The facsimile copy

furnished the defendant with notice of the date of the 1995 conviction, prior to the trial on the part B information, and, as a result, he was not prejudiced. We note that, at trial, the state presented adequate evidence, including certified copies of the defendant's 1995 and 1999 convictions." Id., 380. Similarly, in *State* v. *John L.*, 85 Conn. App. 291, 301–302, 856 A.2d 1032, cert. denied, 272 Conn. 903, 863 A.2d 695 (2004), this court, in holding that conclusive proof of authenticity was not required, upheld the state's introduction into evidence of two letters drafted by a criminal defendant, but not signed, on the basis of testimony during trial that they had been found on his computer and contained information that he would have written. "[T]he government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." (Internal quotation marks omitted.) Id., 301. If an unauthenticated facsimile copy is admissible to keep the state's criminal prosecution alive where a defendant's liberty is at stake, then it follows that a document produced by a party moving for summary judgment, with significant circumstantial evidence of its authenticity and corroborative affidavits already in the record, is admissible to keep a civil case alive at least until the trier of fact can make a full determination of that document's authenticity at trial.

In this case, the circumstantial evidence for the authenticity of the handwritten note had already been admitted when the plaintiff sought to introduce the note in her motion for permission to file a supplemental memorandum of law. The deed was in the record. The plaintiff had already filed affidavits before the disclosure of the handwritten note, whose contents corroborated the contents of the handwritten note. The handwritten note contained a signature purported to be that of Chary Nash, which could be compared to

the signature on the deed. "It has long been the law . . . that the trier of fact, whether judge or jury, may compare a disputed writing with a specimen of known authorship to determine the identity of the person." *New Milford Savings Bank* v. *Jajer*, Superior Court, judicial district of Litchfield, Docket No. CV-92-0061073 (August 30, 2005). "Comparisons may be made by the trier of fact, be it judge or jury, with or without the aid of expert testimony." C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 9.6.3, p. 629. "The trier of fact or an expert witness can authenticate a contested item of evidence by comparing it with preauthenticated specimens." Conn. Code Evid. § 9-1, commentary (a) (3). "It is undisputed that where an issue is raised regarding the authenticity of a writing, proof of authenticity may be made by a comparison of the disputed writing with another writing, an exemplar, the authenticity of which has been established. *Shakro* v. *Haddad*, 149 Conn. 160, 163, 177 A.2d 221 (1961); *Tyler* v. *Todd*, 36 Conn. 218, 222 (1869). . . . In general, a writing may be authenticated by a number of methods, including direct testimony, circumstantial evidence or proof of custody." (Citations omitted; internal quotation marks omitted.) *American Heritage Agency, Inc.* v. *Gelinas*, 62 Conn. App. 711, 720, 774 A.2d 220, cert. denied, 257 Conn. 903, 777 A.2d 192 (2001).

Neither *Farrell* v. *Twenty-First Century Ins. Co.*, 118 Conn. App. 757, 985 A.2d 1076 (2010), aff'd, 301 Conn. 657, 21 A.3d 816 (2011), nor *Fiorelli* v. *Gorski*, 120 Conn. App. 298, 991 A.2d 1105, cert. denied, 298 Conn. 933, 10 A.3d 517 (2010), both cited by the trial court in its memorandum of decision rendering summary judgment with respect to the evidence standard, were decided on whether a document submitted in opposition to summary judgment was properly authenticated. The primary case cited by the majority regarding the authentication requirement, *New Haven* v. *Pantani*, 89

Conn. App. 675, 874 A.2d 849 (2005), is also based on dissimilar facts and circumstances. In that case, the city of New Haven had moved for summary judgment in an action to foreclose municipal tax liens, but had failed to authenticate tax documents in its own possession that supported its motion and had not filed either an original certificate of lien or a certified copy of it. Id., 679. In other words, the party seeking summary judgment offered unauthenticated copies of documents from its own files, not documents produced by the other side during discovery.

This case is notably different from those cited by the trial court and the majority. In her proposed supplemental memorandum of law, the plaintiff described the contents of the handwritten note, how the affidavits and the deed already in the record corroborated those contents, the existence of the grantor's signature, the date on the document and why the document was relevant to the motions for summary judgment. Most significantly, the circumstances under which the document was obtained—through production by the opposing party in response to a discovery request from the nonmoving party—remove the concern about authenticity that comes when a party produces documents from its own files. Therefore, the circumstances here do not implicate the concerns expressed in *Great Country Bank* v. *Pastore*, 241 Conn. 423, 436, 696 A.2d 1254 (1997), which is cited by the majority. Id. (summary judgment procedure would be defeated if, without any showing of evidence, case could be forced to trial by mere assertion that issue exists). The plaintiff made more than a "mere assertion that an issue exists" in opposing summary judgment. In this case, an affidavit attesting to the note's authenticity was not necessary because the evidence for authenticity was already in the record. The plaintiff's proposed supplemental memorandum of law, rather than being a lesser substitute for documentation outside

the pleadings of the note's authenticity, properly indicated to the court where in the record such required documentation already existed. After submitting the evidence of authenticity and explaining the relevance of the evidence, the plaintiff was not also required to explicitly request that the court consider it.

Furthermore, the court decided the motions for summary judgment at the same time as it denied the motion to submit the supplemental memorandum of law. As a result, despite making the required prima facie showing of authenticity, the plaintiff was denied the opportunity to submit whatever additional authentication the court might require during trial or prior to the decision on the motions for summary judgment.

IV

"A judge's function when considering a summary judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried; rather, only if the case is dead on arrival, should the court take the drastic step of administering the last rites by granting summary judgment." (Internal quotation marks omitted.) *Mott* v. *Wal-Mart Stores East, LP*, supra, 139 Conn. App. 631.

In this case, the plaintiff made a showing that there was real doubt about the facts relevant to a proper application of § 47-33a. Section 47-33a allows evidence of a date for exercising the option as long as it was contained in the original agreement—not only when it was recorded with the deed. Parol evidence is acceptable if it shows that such a date was a consistent additional term, whether agreed to orally or in writing, or in this case, by both methods. Finally, a document's authenticity may be shown by many methods, not solely by affidavits. In this case, there was an agreement on the date for exercising the option, requested by the

44

grantor and memorialized in writing. The plaintiff honored that agreement. The trial court had evidence of that agreement before it in the record. The trial court also had documentation of the authenticity of that evidence. Even without the handwritten note, evidence from the plaintiff's affidavits showed a genuine issue of material fact. Based on a plenary review of the record, I conclude that the trial court's decision to render summary judgment was not legally or logically correct.[8]

In this case, the defendants submitted a copy of the plaintiff's complaint and exhibits, including the original deed containing the option, in support of their motions for summary judgment, relying on their incorrect interpretation of § 47-33a to argue that because the deed did not include the date, the eighteen month time limit in the statute applied to extinguish the option. Because that conclusion was incorrect, the defendants did not meet their burden to establish that there was no genuine issue of material fact. Despite significant doubt about

[8] The majority concludes that the trial court's decision to exclude evidence of consistent additional terms is subject to review for abuse of discretion. In *Mott* v. *Wal-Mart Stores East, LP*, supra, 139 Conn. App. 625, however, this court, reviewing a decision to render summary judgment, conducted a plenary review of the entire record, including evidence submitted both to support and to oppose summary judgment, to conclude that summary judgment was not appropriate, and did not apply the narrower standard of abuse of discretion. See also *Doyle* v. *Kamm*, 133 Conn. App. 25, 39, 35 A.3d 308 (2012) (when court's evidentiary decision is based on interpretation of Connecticut Code of Evidence, standard of review is plenary). Nevertheless, even subject to review for abuse of discretion, the decision to exclude highly relevant evidence based on an overly narrow reading of the authentication requirements in Practice Book § 17-45 does constitute an abuse of discretion when viewed in light of the long-standing practice of limiting summary judgment to cases where there can be no doubt about what the truth is, as well as the command of Practice Book § 1-8 to interpret the rules liberally to advance justice. I emphasize this point only to clarify the legal standard and its implications and not to criticize the trial court, whose conclusions about § 47-33a and the admissibility of parol evidence would have understandably, although incorrectly, rendered the affidavits and the handwritten note irrelevant.

what the parties agreed to, the court prematurely pulled the plug on this case. I would, therefore, reverse the judgment and remand the case for trial.