FAMILY GARAGE, INC. *v.* COMMISSIONER
OF MOTOR VEHICLES
(AC 32001)
(AC 32003)

Bishop, Espinosa and Mihalakos, Js.

Argued May 16—officially released July 26, 2011

*Thomas J. Weihing*, with whom, on the brief, were *Virginia C. Foreman* and *John T. Bochanis*, for the appellant (plaintiff).

*Drew S. Graham*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (defendant).

*Opinion*

BISHOP, J. These consolidated appeals arise from two complaints filed with the department of motor vehicles (department) alleging that the plaintiff, Family Garage, Inc., charged illegal "steering fees" for the release of vehicles that it had towed to its place of business.[1] The plaintiff appeals from the judgments of the trial court dismissing its administrative appeals from the decisions of the defendant, the state commissioner of motor vehicles (commissioner), ordering the plaintiff to make restitution to the complainants and to pay civil penalties. On appeal, the plaintiff claims that the trial court erred in upholding the findings of the commissioner, who, acting through the department hearing officer, improperly (1) determined that steering fees were unauthorized at the time of the incidents,

---

[1] The term "steering fee" refers to a charge imposed by a garage to which a disabled vehicle has been towed when the vehicle owner or insurer "steers" the business to a competitor garage instead of having the original garage perform the repair work.

(2) based his decision solely upon unreliable hearsay evidence, (3) determined that the plaintiff had charged fees to release the vehicles and (4) condoned a violation of public policy. We affirm the judgments of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the plaintiff's claims. As to AC 32001, in October, 2006, the plaintiff towed a damaged vehicle owned by Brenda Smith and Daniel Smith to its place of business. The vehicle was insured by Travelers Insurance Company (Travelers). On October 13, 2006, the owners requested that the plaintiff release the vehicle, at which time it wrote an invoice to Daniel Smith describing a $500 "steering fee—forced by insurance company to use shop of their own choice." Travelers paid the charge. Subsequently, Travelers filed a complaint with the department on November 8, 2006. In a memorandum of decision following a hearing, the commissioner ordered the plaintiff to make restitution to Travelers in the amount of $500 and to pay a civil penalty of $250 to the department.

As to AC 32003, in December, 2006, the plaintiff had towed a damaged vehicle owned by Marie Sainvil to its place of business. The vehicle was insured by Progressive Insurance Company (Progressive). On December 6, 2006, Sainvil requested that the plaintiff release the vehicle, at which time it wrote invoices to Sainvil describing a $750 "steering fee" and a $48 fee for "1 hour wasted with owner by phone." Progressive ultimately paid the charges. Subsequently, Progressive filed a complaint with the department on December 19, 2006. In a memorandum of decision following a hearing, the commissioner ordered the plaintiff to make restitution to Progressive in the amount of $798 and to pay a civil penalty of $250 to the department.

The plaintiff appealed both decisions to the Superior Court. The court issued a memorandum of decision

on February 8, 2010, dismissing the plaintiff's appeals. These appeals followed.

We begin with our standard of review of an administrative appeal. "We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.] . . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .

"An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .

"[A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the

court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) *Spitz* v. *Board of Examiners of Psychologists*, 127 Conn. App. 108, 114–16, 12 A.3d 1080 (2011).

I

The plaintiff first claims that the commissioner improperly determined that steering fees were unauthorized at the time of the incidents. The following additional facts are relevant. On June 13, 2007, subsequent to the 2006 incidents, the commissioner issued a letter to "All Connecticut Towers," advising that General Statutes §§ 14-66 and 14-63-34 through 14-63-37b of the Regulations of Connecticut State Agencies do not authorize "steering fees," "gate fees" or similar charges. The letter noted that any complaint of that nature received thereafter by the department would result in swift enforcement action. Subsequently, at both hearings, the department's Lieutenant Frank Baio testified that, at the time of the incidents, the department had not yet formulated a policy for dealing with steering fee complaints and that this policy was established in the 2007 letter.

The plaintiff, while not disputing that steering fees are currently prohibited, contends that the 2007 letter constituted a new regulation or an amendment to a regulation, and, consequently, the plaintiff lacked proper notice in 2006 that steering fees were prohibited. Following the hearings, however, the commissioner determined that the letter was simply a clarification that the regulations do not authorize steering fees, and the trial court agreed on appeal. We also agree with the commissioner.

"Because the present [claim] presents a question of law and does not involve an agency's time-tested interpretation of its regulations . . . the standard of review

is de novo." *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 622, 15 A.3d 1063 (2011). The current regulatory scheme pertaining to "Permitted Charges" for storage and release of stored motor vehicles took effect prior to the 2006 incidents. It expressly provides that following a nonconsensual tow, no additional fees shall be charged by the towing service for the release of the vehicle to the owner. Regs., Conn. State Agencies §§ 14-63-36b (2) (G) and 14-63-36c (a) and (e).[2] The 2007 policy letter, therefore, did not create a new standard; cf. *Salmon Brook Convalescent Home, Inc.* v. *Commission on Hospitals & Health Care*, 177 Conn. 356, 417 A.2d 358 (1979); nor did it revise the preexisting regulation. See *Persico* v. *Maher*, 191 Conn. 384, 402, 465 A.2d 308 (1983). To the contrary, rather than making a change, the letter simply recognized that, in this highly regulated area, "[t]here is no authorization in the regulations or in the schedule for 'steering fees' " and indicated the department's intention to focus its attention in this area. We conclude, therefore, that the commissioner properly determined that steering fees were unauthorized at the time of the incidents.

## II

The plaintiff's second claim is that the commissioner improperly considered certain hearsay evidence in violation of due process, namely, the complaint documents

[2] General Statutes § 14-66 (a) (3) provides in relevant part: "With respect to the nonconsensual towing or transporting and the storage of motor vehicles, no such person, firm or corporation shall charge more than the rates and charges published by the commissioner. . . ." Section 14-63-36c (a) of the Regulations of Connecticut State Agencies provides that, for nonconsensual towing or transporting services, a towing service may not charge any fees in excess of the tow charge. The "tow charge" includes the release of the vehicle to the owner or person otherwise entitled to possession. Regs., Conn. State Agencies §§ 14-63-36b (2) (G) and 14-63-36c (e). Our Supreme Court has articulated that "the term 'tow charge' encompasses all of the services rendered in the nonconsensual towing, transporting and releasing of a motor vehicle . . . [including] the labor and equipment needed to move a wrecked or disabled vehicle from the secured storage area to the

submitted to the department by the insurance companies. Each complaint included, inter alia, a complaint form, a letter from the insurance company, copies of invoices written by the plaintiff and a summary by the department inspector. Neither the complainants nor the vehicle owners testified at either hearing; however, the commissioner heard testimony from two department employees, a lieutenant and an inspector, at both hearings and from Thornton Scott, the plaintiff's vice president, at the Travelers hearing. The plaintiff contends that, in light of the fact that representatives of Travelers and Progressive were not present for cross-examination at the respective hearings, the commissioner should not have relied upon the documents. We do not agree.

"[W]e begin by noting that hearsay testimony, so long as it is sufficiently trustworthy, generally is admissible in administrative hearings." *Addona* v. *Administrator, Unemployment Compensation Act*, 121 Conn. App. 355, 363, 996 A.2d 280 (2010); see General Statutes § 4-178.[3] Nevertheless, "[i]f hearsay evidence is insufficiently trustworthy to be considered 'substantial evidence' and it is the *only* evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing . . . that the appellant knew it would be used and failed to ask the commissioner to subpoena the declarants." (Emphasis added.) *Carlson* v. *Kozlowski*, 172 Conn. 263, 267, 374 A.2d 207 (1977).

Because the challenged documents were not the only evidence probative of the plaintiff's culpability, we need

---

designated vehicle retrieval area." *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, supra, 300 Conn. 623.

[3] General Statutes § 4-178 of the UAPA provides in relevant part: "In contested cases: (1) Any oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitious evidence . . . (5) a party and such agency may conduct cross-examinations required for a full and true disclosure of the facts . . . ."

not resolve whether the complainants' hearsay statements were sufficiently trustworthy or whether it was incumbent upon the plaintiff to have the complainants subpoenaed if it wished to examine them with respect to the documents. The record included the plaintiff's own invoices indicating that it charged a $500 steering fee in the Travelers incident and a $750 steering fee and a $48 fee for "1 hour wasted with owner by phone" in the Progressive incident. The plaintiff does not dispute the authenticity of the invoices, and the invoices corroborate the allegations in the complaints. Thus, the commissioner did not base his decision upon unreliable hearsay, and we conclude that the commissioner's consideration of the documentary evidence was neither illegal nor an abuse of discretion.

## III

The plaintiff's third claim is that the commissioner improperly determined that the charges were connected to the release of the vehicles. We are not persuaded.

Apart from the documentary evidence, the record contains only the testimony of the department inspector and lieutenant, who lacked personal knowledge of the incidents, and the testimony of Scott, the plaintiff's vice president. Scott testified in the Travelers hearing that the "steering fee" was not tied to the release of the vehicle but, rather, was restitution paid by Travelers in exchange for the plaintiff's promise not to sue Travelers for interfering with the plaintiff's alleged repair contract with the vehicle's owner. Renewing its contention that the commissioner should have disregarded the documentary evidence as unreliable hearsay, the plaintiff argues that the testimony alone did not constitute sufficient evidence to support the commissioner's determination that the plaintiff had charged fees to release the vehicles.

Scott's testimony, however, which the commissioner appears to have disbelieved, was not the only evidence relevant to the issue of whether the fees were charged in connection with the release of the vehicles. As we concluded in our analysis of the prior claim, the documentary evidence properly was in the record. That evidence included, for example, the plaintiff's own invoice from the Travelers incident written to the vehicle owner, Daniel Smith, with the description "steering fee—forced by insurance company to use shop of their own choice." On the basis of our review of the entire record, we conclude that there was substantial evidence to support the commissioner's determination that the plaintiff charged fees to release the vehicles.

IV

The plaintiff's final claim is that the commissioner improperly condoned a violation of public policy. General Statutes § 38a-354 (b) provides in relevant part that "[n]o insurance company doing business in this state, or agent or adjuster for such company shall (1) require any insured to use a specific person for the provision of automobile physical damage repairs . . . ." The plaintiff adduced documentation and Scott's testimony indicating that the owners of the vehicles had agreed to have the vehicles repaired at the plaintiff's garage but that Travelers and Progressive had insisted on having the repairs done elsewhere. Given that the complainants' arguably illegal conduct instigated the incidents, the plaintiff claims that, by ordering the plaintiff to make restitution to the complainants, the commissioner's decision condoned their conduct. We do not agree.

In support of this claim, the plaintiff cites the authority of the courts to vacate an arbitral award that violates public policy; see *State* v. *Connecticut State Employees Assn., SEIU Local 2001*, 287 Conn. 258, 271–74, 947 A.2d 928 (2008); and also cites the doctrine of unclean

hands, which may be raised as a special defense to an equitable action. *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 407, 867 A.2d 841 (2005). The plaintiff provides no legal authority, however, for the proposition that these means of relief are available in the context of an administrative complaint, which is subject to its own well settled principles of review. We conclude, therefore, that the instigating conduct of the complainants was not relevant to the determination of the plaintiff's culpability, and the commissioner's decisions do not reflect upon the propriety of the complainants' collateral conduct.

The judgments are affirmed.

In this opinion the other judges concurred.