******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TODD GAGLIARDI *v.* COMMISSIONER OF CHILDREN
AND FAMILIES
(AC 36421)

Keller, Mullins and Bear, Js.

*Submitted on briefs January 9—officially released March 3, 2015*

(Appeal from Superior Court, judicial district of New
Britain, Prescott, J.)

*William B. Westcott* filed a brief for the appellant
(plaintiff).

*George Jepsen*, attorney general, and *John E. Tucker*
and *Benjamin Zivyon*, assistant attorneys general, filed

a brief for the appellee (defendant).

*Opinion*

KELLER, J. The plaintiff, Todd Gagliardi, appeals from the judgment rendered by the trial court dismissing his appeal from an administrative decision of the Commissioner of the Department of Children and Families (commissioner) that substantiated claims of child sexual abuse committed by the plaintiff against G.M.,[1] and placed the plaintiff's name on the commissioner's child abuse and neglect central registry (registry). On appeal, the plaintiff claims that the court erred in dismissing his appeal from that administrative decision by erroneously concluding that an exhibit containing text messages admitted during the plaintiff's substantiation hearing was sufficiently authenticated. We affirm the judgment of the court.

The following facts, as set forth by the trial court, and procedural history are relevant here. "In May 2012, G.M. was a sixteen year old junior at Branford High School. The plaintiff . . . was a teacher at Branford High School, and had been G.M.'s Spanish teacher during her freshman year. Between May 26 and May 31, 2012, the plaintiff exchanged text messages of an increasingly sexual nature with G.M. The text messages include graphic descriptions of various sexual acts that G.M. and the plaintiff [purportedly] wanted to perform on each other and of sexual activities that they had engaged in with others. The plaintiff and G.M. did not have any physical contact during this weeklong period.

"G.M.'s mother 'periodically pulls' her daughter's cell phone records. On May 31, 2012, G.M.'s mother obtained [G.M.'s] text message history from her cell phone provider and discovered the texts between G.M. and the plaintiff. G.M.'s mother reported the texts to the school and provided copies of the transcribed messages to the Branford Police Department. The police then provided a copy of the transcript to [an investigator working for the commissioner, Shanelle] Ingram. G.M. admitted sending text messages to the plaintiff. [The commissioner] and the Branford Police Department completed a joint investigation, but criminal charges against the plaintiff were not filed because G.M.'s mother did not want to press charges, no physical contact had occurred, and the plaintiff had resigned from his teaching position.

"In July 2012, the plaintiff received notice that the [commissioner] had completed [the] investigation and had substantiated the allegations against him. The notice further informed the plaintiff that [the commissioner] deemed him a risk to the safety of children, and recommended that his name be placed on the [registry].[2] The plaintiff requested additional review of the findings in accordance with General Statutes § 17a-101k (b) and (c).

"On August 27, 2012, [the commissioner] notified the

plaintiff that [she] had conducted an internal review and had chosen to uphold [her] findings. At the plaintiff's request, [the commissioner] then held a substantiation hearing on November 29, 2012. Although he was represented by counsel at the hearing, the plaintiff decided not to personally attend. At the hearing, a transcript of text messages that were sent by the plaintiff and G.M. to each other was admitted into evidence. The hearing officer, by relying on the content of the text messages themselves and other evidence in the record, concluded that the text messages were sufficiently authenticated and admitted them into evidence.

"[The commissioner] issued a final written decision on January 18, 2013, upholding the substantiation of sexual abuse and the plaintiff's placement on the [registry]. The [hearing officer's] decision was based primarily on the sexual content of the text messages, which were furnished by G.M.'s mother, who obtained them from [the cell] phone company. The [hearing officer] reasoned that '[t]he content of the text messages between the [plaintiff] and [G.M.] supports the [commissioner's] finding that the [plaintiff] sexually exploited her through grooming behavior designed to result in more intimate sexual conduct.' " (Footnotes altered.)

Pursuant to General Statutes § 4-183,[3] the plaintiff appealed from the commissioner's administrative decision to the trial court on the basis of his claim that the text messages at issue were improperly admitted as evidence before the hearing officer because they were not sufficiently authenticated to prove that he had authored them.

The court dismissed the plaintiff's appeal. At the outset, the court emphasized that administrative tribunals are not bound by the Connecticut Code of Evidence and may consider hearsay in determining the authenticity of exhibits that would be inadmissible under the rules of evidence so long as the exhibits are "reliable, probative, material, and not unduly repetitious." The court acknowledged that the text messages were authenticated primarily on the basis of their content, which contained multiple layers of hearsay. Despite this, the court found that the text messages were trustworthy and reliable for three reasons. First, the court rejected the notion that the lengthy chain of custody of the text message records rendered them untrustworthy. According to the court, the text message records were transferred from (1) the company providing G.M.'s cell phone service to (2) G.M.'s mother, who transferred them to (3) the police, who transferred them to (4) the commissioner. The court found that the plaintiff had not alleged that any of the foregoing parties altered the records or had a motive to do so. Therefore, the court refused to conclude that the lengthy chain of custody of the records, without more, undermined their reliability.

Second, the court agreed with the hearing officer's

finding that the record contained no evidence suggesting that G.M. had any reason to fabricate the allegations raised against the plaintiff. The court noted that G.M. admitted to the exchange of text messages between herself and the plaintiff only after her mother discovered the text messages. Further, the court emphasized the hearing officer's finding that there was no evidence presented suggesting that G.M.'s mental state was impaired or impacted the reliability of the statements concerning the text messages that she provided to Ingram during Ingram's investigation.

Third, the court found that the content of the text messages was sufficient to authenticate the plaintiff as their author. The court noted that text messages may be authenticated by circumstantial evidence of " 'distinctive characteristics' " within the text messages that identify the author. The court listed the following " 'distinctive characteristics' " contained in the text messages that sufficiently authenticated the identity of the author of the text messages as the plaintiff: (1) the sender identified himself as a Spanish teacher at G.M.'s school; (2) the messages contained flirting and repeated warnings about the need for secrecy, "exactly what one would expect from a teacher attempting to establish a sexual relationship with a student"; and (3) many of the text messages focused on various articles of clothing that the plaintiff and G.M. wore at school.

In addition, the court rejected the plaintiff's claims that (1) someone pretending to be the plaintiff sent the text messages, (2) there was no evidence connecting the plaintiff's cell phone account with the cell phone number that sent the text messages to G.M., and (3) there was no corroborating evidence of an inappropriate relationship between the plaintiff and G.M. The court found that the plaintiff failed to introduce any evidence in support of the first two claims. Moreover, the court stated that, in any event, the commissioner did not have the burden at the substantiation hearing to rule out every possible inconsistency with authenticity. Lastly, the court found that the plaintiff had conceded that, if the text messages were properly authenticated and admitted, then the hearing officer had substantial evidence to support her decision.

For the foregoing reasons, the court concluded that the hearing officer did not abuse her discretion by admitting the text messages into evidence and dismissed the plaintiff's appeal. This appeal followed.

The plaintiff claims that the court erred in dismissing his appeal from that administrative decision because the court erroneously concluded that the hearing officer did not abuse her discretion by admitting into evidence the text messages at issue in this appeal. Specifically, the plaintiff claims that the text messages were not properly authenticated to prove that he was their author. We disagree.

We begin by setting forth the relevant standard of review and applicable law. "We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.][4] . . . . Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Footnote added; internal quotation marks omitted.) *Family Garage, Inc.* v. *Commissioner of Motor Vehicles*, 130 Conn. App. 353, 357, 23 A.3d 752, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011). "[T]he plaintiff bears the burden of demonstrating that a hearing officer's evidentiary ruling is arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Lucarelli* v. *Freedom of Information Commission*, 135 Conn. App. 807, 817, 43 A.3d 237 (2012).

"An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .

"[A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted). *Family Garage, Inc.* v. *Commissioner of Motor Vehicles*, supra, 130 Conn. App. 357–58.

"Authentication is . . . a necessary preliminary to the introduction of most writings in evidence . . . ." (Internal quotation marks omitted.) *Nash* v. *Stevens*, 144 Conn. App. 1, 39, 71 A.3d 635, cert. denied, 310 Conn. 915, 76 A.3d 628 (2013). "The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims

it to be. . . . In general, a writing may be authenticated by a number of methods, including direct testimony or circumstantial evidence. . . . Both courts and commentators have noted that the showing of authenticity is not on a par with the more technical evidentiary rules that govern admissibility, such as hearsay exceptions, competency and privilege. . . . Rather, there need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing of authorship is made to the court, the evidence, as long as it is otherwise admissible, goes to the [finder of fact], which ultimately will determine its authenticity." (Citation omitted; internal quotation marks omitted.) Id., 38–39.

"[T]he bar for authentication of evidence is not particularly high. . . . [T]he proponent need not rule out all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be . . . ." (Citation omitted; internal quotation marks omitted.) *United States* v. *Vayner*, 769 F.3d 125, 130 (2d Cir. 2014).[5] In addition, "[a]n electronic document may . . . be authenticated by traditional means such as direct testimony of the purported author or circumstantial evidence of 'distinctive characteristics' in the document that identify the author." *State* v. *Eleck*, 130 Conn. App. 632, 640, 23 A.3d 818 (2011), aff'd, 314 Conn. 123, 100 A.3d 817 (2014).

Furthermore, this court need not consider whether the text messages were authenticated and admitted in accordance with the Connecticut Code of Evidence. It is axiomatic that "administrative tribunals are not strictly bound by the rules of evidence . . . . [T]hey may consider exhibits [that] would normally be incompetent in a judicial proceeding, so long as the evidence is reliable and probative." (Internal quotation marks omitted.) *F.M.* v. *Commissioner of Children & Families*, 143 Conn. App. 454, 477, 72 A.3d 1095 (2013). According to General Statutes § 4-178, in a contested case before an agency, "[a]ny oral or documentary evidence may be received, but the agency shall, as a matter of policy, provide for the exclusion of irrelevant, immaterial or unduly repetitive evidence . . . ." See also Regs., Conn. State Agencies § 17a-101k-8 (g).

"Moreover, hearsay evidence is not prohibited in administrative proceedings . . . . Hearsay testimony generally is admissible in administrative hearings as long as it is sufficiently trustworthy." (Citation omitted; internal quotation marks omitted.) *F.M.* v. *Commissioner of Children & Families*, supra, 143 Conn. App. 477.

On appeal, the plaintiff asserts that the text messages admitted into evidence during the substantiation hearing were not properly authenticated.[6] According to the plaintiff, the trial court's focus on the chain of custody of the text message records and G.M.'s alleged lack of motivation to fabricate the allegations against the

plaintiff was misplaced because the foregoing factors have no bearing on whether the plaintiff authored the text messages to G.M. Furthermore, the plaintiff claims that the content of the text messages alone, without corroboration, was insufficient to prove that he authored them. The plaintiff also claims that the multiple layers of hearsay contained within the text messages rendered them untrustworthy.

After a careful review of the record, we agree with the court and conclude that the text messages were sufficiently authenticated to identify the plaintiff as their author. The court correctly found that there was no evidence of tampering in the chain of custody of the text message records, which bolsters the reliability of the records. Furthermore, the court correctly found that there was no evidence indicating that G.M. fabricated the allegations against the plaintiff, which further buttresses the reliability of the records.

The plaintiff's chief assertion is that the content of the text messages did not establish that he authored them. Although the plaintiff concedes that, on the basis of the content of the text messages and the time period within which they were exchanged, he fell within the category of individuals who may have authored them, he claims that the evidence failed to prove affirmatively that he was their author. The plaintiff argues that there was no evidence that there was any inappropriate physical contact between the plaintiff and G.M., or that the plaintiff had a cell phone account associated with the cell phone number from which G.M. received the text messages. The plaintiff claims that, without such corroborating evidence, the text messages, taken alone, did not sufficiently establish that he authored them. We disagree.

As we previously explained in this opinion, the bar for a finding of authenticity is not high. *United States* v. *Vayner*, supra, 769 F.3d 130. A party proffering evidence does not have the burden to disprove all possible inconsistencies with authenticity, or prove beyond all doubt that the text messages are what the party purports them to be. Id. All that is required is a prima facie showing of authenticity. *Nash* v. *Stevens*, supra, 144 Conn. App. 39. This may be illustrated through circumstantial evidence drawn from the content of the text messages alone, without additional evidence. See *State* v. *Eleck*, supra, 130 Conn. App. 642–44 (noting that cases establishing authorship of messages based on their content focus on particularly distinctive identifying characteristics of messages and often, but not always, corroborating evidence).

Here, the contents of the text messages established a prima facie showing that the plaintiff authored them. As the trial court correctly found, the text messages contained distinctive characteristics sufficient to authenticate the identity of the author as the plaintiff.

The exhibit containing the text message records spanned forty two pages and included numerous, detailed conversations. Cf. *State* v. *Eleck*, supra, 130 Conn. App. 642 (contents of single electronic message vaguely referencing history between parties insufficient to prove authorship). In the text messages sent to G.M., the author provided the following information: he identified himself as a teacher at G.M.'s school; he noted detailed physical characteristics of G.M. and also complimented G.M. on her appearance at school on certain days; he repeatedly asked G.M. to delete the text messages and expressed concern about losing his job if a third party discovered the text messages; he referenced sending text messages to another female student at the school; he mentioned seeing G.M. at her high school's junior prom and specifically stated that G.M. did not speak to him at the prom, a fact G.M. confirmed in a subsequent text message; he noted that G.M.'s sister oftentimes looked at him at school, a fact G.M. confirmed in a subsequent text message; he mentioned seeing G.M.'s mother at a parent teacher conference and noted similarities between G.M. and her mother; he asked G.M. whether she believed that a female student she knew disliked him as a result of the attention he gave to G.M.; he listed the names of a few female students at the school whom he considered attractive; he discussed interactions he had with teachers he knew in the school; he mentioned seeing G.M. during lunch breaks at the school; he described having a "special" relationship with G.M. "since the beginning," a statement G.M. agreed with in a subsequent text; he noted giving G.M. a "high five" at school, a fact G.M. confirmed in a subsequent text; and he mentioned observing at one point G.M. speaking with another student at school, a fact G.M. confirmed in a subsequent text. The foregoing details contained in the text messages provided the hearing officer with sufficient evidence to find that the plaintiff authored the text messages sent to G.M. The lack of corroborating evidence, such as evidence of other interactions between the plaintiff and G.M. or phone records linking the plaintiff to the cell phone number that sent the text messages to G.M., did not diminish the probative value of the text message records.

The plaintiff further claims that the text messages were unreliable because they contained layers of hearsay and, therefore, the hearing officer abused her discretion by primarily relying on them to find that the plaintiff had authored the text messages. We disagree. Evidence containing hearsay may be admitted during administrative hearings so long as it is sufficiently trustworthy. *F.M.* v. *Commissioner of Children & Families*, supra, 143 Conn. App. 477. The record contains no evidence indicating that the text messages are untrustworthy. As we previously mentioned, the chain of custody did not indicate any evidence of alterations to the text mes-

sages, and there was no evidence indicating that G.M. had any motive to fabricate the allegations against the plaintiff. Therefore, the hearing officer did not abuse her discretion by admitting the exhibit containing the text messages because the mere fact that the text messages contained hearsay did not render them untrustworthy.

For the foregoing reasons, we agree with the court and conclude that the hearing officer had substantial evidence indicating that the plaintiff authored the text messages sent to G.M. Despite the fact that the text messages contained hearsay, the hearing officer did not act unreasonably, arbitrarily, illegally, or in abuse of her discretion in admitting into evidence the exhibit containing the text messages.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] General Statutes § 17a-101k (a) provides in relevant part: "The Commissioner of Children and Families shall maintain a registry of the commissioner's findings of abuse or neglect of children pursuant to section 17a-101g . . . . The regulations . . . shall provide for the use of the registry on a twenty-four-hour daily basis to prevent or discover abuse of children and the establishment of a hearing process for any appeal by a person of the commissioner's determination that such person is responsible for the abuse or neglect of a child pursuant to subsection (b) of section 17a-101g. The information contained in the registry and any other information relative to child abuse, wherever located, shall be confidential, subject to such statutes and regulations governing their use and access as shall conform to the requirements of federal law or regulations. . . ."

General Statutes § 17a-101g provides in relevant part: "(b) . . . After an investigation into a report of abuse or neglect has been completed, the commissioner shall determine, based upon a standard of reasonable cause, whether a child has been abused or neglected, as defined in section 46b-120. If the commissioner determines that abuse or neglect has occurred, the commissioner shall also determine whether: (1) There is an identifiable person responsible for such abuse or neglect; and (2) such identifiable person poses a risk to the health, safety or well-being of children and should be recommended by the commissioner for placement on the child abuse and neglect registry established pursuant to section 17a-101k. If the commissioner has made the determinations in subdivisions (1) and (2) of this subsection, the commissioner shall issue notice of a recommended finding to the person suspected to be responsible for such abuse or neglect in accordance with section 17a-101k.

"(c) Except as provided in subsection (d) of this section, no entry of the recommended finding shall be made on the child abuse or neglect registry and no information concerning the finding shall be disclosed by the commissioner pursuant to a check of the child abuse or neglect registry . . . until the exhaustion or waiver of all administrative appeals available to the person suspected to be responsible for the abuse or neglect, as provided in section 17a-101k. . . ."

[3] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[4] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made

upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .”

[5] *Vayner* concerns rule 901 of the Federal Rules of Evidence, which is similar § 9-1 of the Connecticut Code of Evidence regarding the requirement of authentication.

[6] In his appellate brief, in the context of his analysis of the authentication issue, the plaintiff broadly claims that a procedural due process violation occurred on the basis of his alleged failure to have a sufficient opportunity to conduct cross-examination regarding the foundation and origin of the text messages. The commissioner argues that, to the extent the plaintiff raises this claim, he inadequately briefed it. We conclude that his summary treatment of this claim is inadequate. See Practice Book § 67-4 (a) and (d). Thus, we agree with the commissioner and decline to review this claim. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 233, 90 A.3d 998 (2014) (“[i]t is well settled that [w]e are not required to review claims that are inadequately briefed” [internal quotation marks omitted]).

---